1

2

3

4

5         IN THE UNITED STATES DISTRICT COURT

6       FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8 | PIRELLI ARMSTRONG TIRE               No. C 11-2369 SI
CORPORATION RETIREE MEDICAL

9 BENEFITS TRUST, and CITY OF WESTLAND   **ORDER GRANTING IN PART AND**
POLICE AND FIRE RETIREMENT SYSTEM,   **DENYING IN PART DEFENDANTS'**

10 derivatively on behalf of WELLS FARGO &   **MOTION TO DISMISS THE VERIFIED**
CO.,                              **COMPLAINT AND GRANTING**

11                                   **DEFENDANTS' REQUEST FOR**
        Plaintiffs,                **JUDICIAL NOTICE**

12

13   v.

14 JOHN G. STUMPF, et al.,

15         Defendants,
        -and-

16 WELLS FARGO & CO., a Delaware
corporation,

17         Nominal Defendant.
                              /

18

19      On January 27, 2012, the Court held a hearing on defendants' motion to dismiss plaintiffs'

20 verified complaint.  After consideration of the parties' papers and arguments, defendants' motion to

21 dismiss is GRANTED IN PART and DENIED IN PART.  If plaintiffs wish to amend the complaint, the

22 amended complaint must be filed by **February 24, 2012**.  The Court also GRANTS defendants' request

23 for judicial notice.

24

25               **BACKGROUND**

26      This is a shareholder derivative action on behalf of nominal party Wells Fargo & Company

27 against its board of directors, alleging claims for breach of fiduciary duty, abuse of control, gross

28 mismanagement, and corporate waste.

**United States District Court**
**For the Northern District of California**

Wells Fargo & Company (the "Company") is a diversified financial services company that provides retail, commercial, and corporate banking services principally in the United States. Verified Consolidated Shareholder Derivative Complaint for the Breach of Fiduciary Duty, Abuse of Control, Gross Mismanagement, and Corporate Waste, ("Compl.") ¶ 32. Wells Fargo is incorporated in Delaware. *Id*. At the time of filing,[1] Wells Fargo's Board (the "Board") consisted of fifteen directors. Fourteen of those directors are named individual defendants in this action: John G. Stumpf ("Stumpf"), John D. Baker II ("Baker"), John S. Chen ("Chen"), Lloyd H. Dean ("Dean"), Susan E. Engel ("Engel"), Enrique Hernandez, Jr. ("Hernandez"), Donald M. James ("James"), Mackey J. McDonald ("McDonald"), Cynthia H. Milligan ("Milligan"), Nicholas G. Moore ("Moore"), Phillip J. Quigley ("Quigley"), Judith M. Runstad ("Runstad"), Stephen W. Sanger ("Sanger"), and Susan G. Swenson ("Swenson"). *Id*. at ¶¶ 33-48. A past board member, Richard D. McCormick ("McCormick"), and former Chief Financial Officer and Executive Vice President Howard I. Atkins ("Atkins"), are also named defendants.[2] *Id*. at ¶¶ 34, 41. Of the named directors, only Stumpf is an inside or management director. *Id*. at ¶ 33. Current board member Elaine L. Chao ("Chao") is not a named defendant because her appointment occurred a month after the filing of the original complaint. Wells Fargo's Certificate of Incorporation contains an exculpatory provision limiting its directors' liability for breaches of fiduciary duty to actions involving disloyalty, bad faith, or improper personal benefits. Declaration of Marc P. Wolf Ex. D. Art XIV.

Plaintiffs Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust and City of Westland Police and Fire Retirement System are both current shareholders of Wells Fargo. Compl. ¶¶ 30-31. They have held shares since January 26, 2009, and May 2009 respectively. *Id*.

As early as 2007, Wells Fargo and its subsidiaries began home foreclosure proceedings around the country. *Id*. at ¶ 74. Wells Fargo implemented a policy of mass processing the declarations or affidavits to be submitted in court proceedings to accelerate these proceedings. *Id*. Plaintiffs allege that this policy, known as "robo-signing," had the effect of recklessly avoiding "the work and cost associated

---

[1] The original complaint was filed May 13, 2011.

[2] McCormick left the Board on May 3, 2011. Compl. ¶ 41.

United States District Court
For the Northern District of California

with obtaining facts or documents representing ownership, standing and the right to foreclose on properties." *Id*. at ¶ 75. Therefore, plaintiffs allege, this policy had the effect of concealing the possibility that title and standing could not be perfected and would require Company employees to cause Wells Fargo to file false affidavits with courts and state agencies. *Id*. at ¶¶ 75, 77. Plaintiffs allege that several Wells Fargo employees routinely executed affidavits without personal knowledge of their contents. *Id*. at ¶¶ 83-85, 86-89. This policy is alleged to have continued into the period in which plaintiffs owned Wells Fargo stock. *Id*. at ¶¶ 78, 86, 172.

In 2010, two Wells Fargo employees testified that they signed unverified affidavits. On January 4, 2010, Stanley Silva ("Silva") testified that he routinely executed notices of default without verifying the accuracy of the information contained therein. *Id*. at ¶ 88. On March 9, 2010, Xee Moua ("Moua") testified that she signed Wells Fargo loan documents without verifying their contents other than her name and title. *Id*. at ¶ 83. Later in 2010 news articles regarding Wells Fargo's alleged fraudulent mortgage practices were published. On October 2, 2010, *dailyfinance.com* published an article entitled "Robo-signing: Documents Show Citi and Wells Also Committed Foreclosure Fraud" which discussed Wells Fargo's robo-signing practices. *Id*. at ¶ 104. On October 13, 2010, the *Star Tribune* published an article summarizing the above evidence. *Id*. at ¶ 108. The *Financial Times* published a similar article on October 14, 2010. *Id*. at ¶ 109.

In a conference call on October 20, 2010, defendant Atkins stated that the robo-signing policy was designed by the Company, that the Company had confidence that the policy was sound and accurate, and that the Company did not plan to initiate a moratorium on foreclosures to investigate the policy. *Id*. at ¶¶ 16, 77, 107. During the call defendant Stumpf stated at least twice that the person who signed the affidavits and the person who reviewed them for accuracy was the same individual. *Id*. at ¶ 112. One week later, on October 27, 2010, Wells Fargo issued a press release admitting that its foreclosure processes did not adhere to its formal policy and that a review of more than 55,000 foreclosure affidavits was underway. *Id*. at ¶ 114.

On January 6, 2011, the New York City Comptroller sent a letter to Moore, Chairman of the Audit Committee, calling on the Audit Committee "to conduct an independent review of the Company's internal controls related to loan modifications, foreclosures, and securitizations." *Id*. at ¶ 137. The

Audit Committee is responsible for ensuring compliance with legal and regulatory requirements.  *Id*. at ¶ 138.  On January 9, 2011, the Comptroller issued a press release calling on the Audit Committee of the Board of Wells Fargo, among other banks, to launch an investigation into their foreclosure practices.  *Id*. at ¶ 140.

On February 25, 2011, the Company filed its Annual Report to the SEC in which it stated that the "Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective."  *Id*. at ¶ 144.

On March 21, 2011, the Company filed its §14(a) Proxy Statement with the SEC.  *Id*. at ¶ 148.  Contained in the statement was a stockholder proposal calling for the Board's Audit Committee to conduct an independent review of the company's internal controls related to foreclosures.  *Id*.  The Board recommended that shareholders vote against the proposal because it "has already undertaken comprehensive self assessments and reviews of our mortgage servicing processes," and "[a]n additional independent review would not constitute an effective use of the Company's resources and could distract our efforts to cooperate with reviews undertaken by our federal banking regulators."  *Id*. at ¶ 149.

Plaintiffs allege, however, that Wells Fargo was in fact not cooperating with government inquiries.  *Id*. at ¶ 165.  According to the complaint, on May 17, 2011, *Sense on Cents* issued an article entitled "Sense on Cents Calls Out Jamie Dimon, Vikram Pandit, Brian Moynihan, Michael Carpenter, and John Stumpf," stating that the banks, including Wells Fargo, had been filing motions to quash discovery and appeals in order to stall the United States Trustee's investigations.  *Id*.  Plaintiffs also allege that the banks, including Wells Fargo, have refused to provide details on their overall policies and procedures to government investigators. *Id*.  at ¶¶ 165-66.  Furthermore, Wells Fargo is alleged to have continued robo-signing even after stating that the practice had been halted more than six months before.  *Id*. at ¶ 172.

As part of their mortgage practice, Wells Fargo hired Mortgage Electronic Registration System, Inc. ("MERS") to simplify the tracking of individual mortgages.  *Id*. at ¶ 51.  On April 13, 2011, MERS and its parent corporation MERSCORP entered into a consent order with government regulators regarding irregularities in its mortgage documentation practices.  *Id*. ¶ 162.

Defendants Stumpf and Atkins were awarded millions of dollars in bonuses for fiscal year 2010.

4

*Id*. at ¶ 150.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

As a preliminary matter, defendants ask the Court to take judicial notice of Wells Fargo's Certificate of Incorporation as well as three of its past SEC filings pursuant to F.R.E. Rule 201(b). "[F]acts subject to judicial notice may be considered on a motion to dismiss." *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987). "In a securities action, a court may take judicial notice of public filings when adjudicating a motion to dismiss a complaint for failure to state a claim

upon which relief can be granted." *In re Calpine Corp.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003) (citing *In re Nuko Information Sys., Inc. Sec. Litig.*, 199 F.R.D. 338, 341 (N.D. Cal. 2000) (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), and *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)); *see also Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1988) ("We therefore hold that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.").

The Court GRANTS defendants' request for judicial notice of documents Wells Fargo filed with the SEC, including forms 8-K (Wolf. Decl. Ex. A, B), 14A (Wolf Decl. Ex. C), and 10-Q (Wolf Decl. Ex. D).

To sustain a derivative shareholders suit at the pleading stage, plaintiffs must adequately allege (1) that they contemporaneously owned Wells Fargo stock at the time of the wrongful acts and continue to own stock through the suit, (2) that they made a demand to the Board for corrective action or that demand was futile, and (3) adequate and particularized facts necessary to support their claims. Fed. R. Civ. Proc. 23.1.

## I.       Contemporaneous stock ownership

Defendants argue that plaintiffs did not contemporaneously own stock at the time of the alleged wrongful acts. Federal Rule of Civil Procedure 23.1 requires that plaintiffs in a derivative action allege that they were shareholders of the company at the time of the alleged wrongful acts and that they retain ownership of the stock for the duration of the lawsuit. *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir.1983). A plaintiff has no standing to sue for alleged misconduct that took place before he became a shareholder of the company. *Kona Enters., Inc. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir. 1999).

Plaintiffs purchased stock in January and May of 2009. Compl. ¶¶ 30-31. While plaintiffs allege, as background, wrongful acts by defendants beginning in 2007, the substantive allegations of the complaint challenge misconduct in 2010 and 2011. *Id.* ¶¶ 74-93 ("Background"); ¶¶ 94-177 ("Substantive Allegations"). Plaintiffs allege that the robo-signing policy continued into 2011, *id.* at ¶¶ 86, 172, that defendants refused to admit that the robo-signing policy was flawed in 2010, *id.* at ¶¶ 110-12, and that defendants misled investors in a proxy statement in 2011. *Id.* at ¶ 149. All of these

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    alleged wrongful acts occurred during the time period in which plaintiffs owned Wells Fargo stock.

2    Plaintiffs' opposition, consistent with the substantive allegations of the complaint, confirms that

3    plaintiffs' claims for liability are not based upon allegedly wrongful acts that occurred prior to plaintiffs'

4    stock ownership. Accordingly, the Court finds that plaintiffs have satisfied the contemporaneous

5    ownership requirement of Federal Rule of Civil Procedure 23.1.

6

7    **II.    Demand futility**

8    Federal Rule of Civil Procedure 23.1 also requires a plaintiff to first demand action from the

9    nominal defendant's directors or "plead with particularity the reasons why such demand would have

10   been futile." *Silicon Graphics*, 183 F.3d at 989.   Pleadings in a derivative suit must state

11   "'particularized factual statements that are essential to the claim. Such facts are sometimes referred to

12   as 'ultimate facts,' 'principal facts' or 'elemental facts.'" *Brehm v. Eisner*, 746 A.2d 244, 254 (Del.

13   2000) (citing Black's Law Dictionary 610–12 (7th ed.1999)).

14   Plaintiffs did not make a pre-suit demand.  Instead they allege demand futility.  Compl. ¶ 185.

15   Upon a pleading of demand futility, the court "'must apply the demand futility exception as it is defined

16   by the law of the state of incorporation.'" *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1002

17   (N.D. Cal. 2007) (quoting *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 108-09 (1991)).  Wells Fargo

18   is incorporated in Delaware.  Compl. ¶ 32.

19   Under Delaware law, demand futility must be determined under the standards articulated in

20   either *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), or *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).

21   Under the two-pronged *Aronson* test, which is used when the board considering the demand made the

22   challenged decision, demand is excused if the derivative complaint pleads particularized facts creating

23   a reason to doubt that "(1) the majority of the directors are disinterested and independent [or] (2) the

24   challenged transaction was otherwise the product of a valid exercise of business judgment."  *Ryan v.*

25   *Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007) (citing *Aronson*, 473 A.2d at 814)  The two prong *Aronson*

26   test is disjunctive.  "If a derivative plaintiff can demonstrate a reasonable doubt as to the first or second

27   prong of the *Aronson* test, then he has demonstrated that demand would have been futile." *Seminaris*

28   *v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).

United States District Court
For the Northern District of California

"The essential predicate for the *Aronson* test is the fact that a decision of the board of directors is being challenged in the derivative suit." *Rales*, 634 A.2d at 933. In contrast, the *Rales* test applies "where the board that would be considering demand did not make a business decision which is being challenged in the derivative suit." *Id.* at 933-34. Such situations arise in three principal scenarios: (1) where a majority of the directors who made the decision have been replaced; (2) where the subject of the suit is not a business decision of the board; and (3) where, as in *Rales*, the challenged decision was made by the board of a different corporation. *Id.* at 934. Under *Rales*, demand is excused if the particularized factual allegations create a reasonable doubt that at least half of the directors could have properly exercised their independent and disinterested business judgment in responding to the demand. *Rales*, 634 A.2d at 934. "That is, in those three circumstances described in *Rales*, the Court will apply only the first ('disinterest' and 'independence') prong of *Aronson*." *In re Bally's Grand Deriv. Litig.*, Case No. 14644, 1997 WL 305803, at *3 (Del. Ch. June 4, 1997). For both tests, the date of the original complaint in which each derivative claim was made is the relevant point in time to test whether making a demand upon the board would have been futile. *California Public Employees' Retirement System v. Coulter*, No. Civ.A. 19191, 2002 WL 31888343, at *6 (Del. Ch. Dec. 18, 2002) (where the amended complaint does not add any derivative claims that were not included in the original complaint, date of the original complaint is controlling); *Aronson*, 473 A.2d at 810; *Rales*, 634 A.2d at 934. The original complaint, filed May 13, 2011, contains all four derivative causes of action alleged here.

Plaintiffs advance four theories of demand futility. First, plaintiffs contend that they have adequately alleged reason to doubt that defendants are disinterested because they face a substantial likelihood of liability due to their actions. Second, plaintiffs contend that the challenged actions are not the product of a valid exercise of business judgment. Third, plaintiffs argue demand is futile because the Board has already refused a demand on the Company by encouraging stockholders to vote against the proposal for an internal investigation. Finally, plaintiffs contend that a majority of defendants are not independent of the Company.

An allegation that directors are not disinterested due to potential liability requires plaintiffs to set forth particularized facts establishing not just a "mere threat" but rather a "substantial likelihood" that the directors could be personally liable for the alleged wrongful acts. *Rales*, 634 A.2d at 936

United States District Court
For the Northern District of California

(quoting *Aronson*, 473 A.2d at 815).  Due to the exculpatory clause in the Company's Certificate of Incorporation, plaintiffs must also allege that defendants acted with *scienter* when they made these allegedly wrongful acts.  *In re Extreme Networks, Inc. Shareholder Derivative Litigation*, 573 F. Supp. 2d 1228, 1239 (N.D. Cal. 2008) ("If directors are exculpated except for claims based on 'fraudulent, illegal or bad faith conduct,' then 'plaintiff must also plead particularized facts that demonstrate that the directors acted with *scienter*, i.e., that they had actual or constructive knowledge that their conduct was legally improper.'") (quoting *Wood v. Baum*, 953 A.2d 136, 141 (2008)).  A plaintiff can allege a breach of fiduciary duty, and therefore substantial likelihood of liability by, "for example, properly alleging particularized facts that show that a director . . . *consciously* disregarded the duty to monitor and oversee the business."  *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 125 (Del. Ch. 2009) (emphasis in original).  At the time of the original complaint, the Wells Fargo Board consisted of fourteen individuals.[3]  Compl. ¶ 184. Under *Aronson*, plaintiffs must raise a reasonable doubt that a majority of these directors are either disinterested or independent. *Aronson*, 473 A.2d at 814.

The Court concludes that under either the *Aronson* or *Rales* test, plaintiffs have demonstrated that demand would have been futile:  plaintiffs have pled reason to doubt that defendants are disinterested, because defendants face a substantial likelihood of liability for breach of fiduciary duty.[4]  Fiduciary duty requires honesty from corporate directors in their communications with the public and shareholders about corporate matters.  *Malone v. Brincat*, 722 A.2d 5, 9-10 (Del. 1998).   Plaintiffs allege that all fourteen board members breached their fiduciary duties of loyalty by advising shareholders to vote against the proposal to undertake an internal investigation while omitting material information regarding the proposal.  In a proxy statement, the Board advised shareholders to vote against a new internal investigation because "the Company has already undertaken comprehensive internal self-assessments" and a new investigation "could distract the Company's efforts to cooperate with the reviews being made by its regulators."  Compl. ¶ 149.  At the same time Wells Fargo was mounting an

---

[3] Stumpf, Baker, Chen, Dean, Engel, Hernandez, James, McDonald, Milligan, Moore, Quigley, Runstad, Sanger, and Swenson.  McCormick left the Board on May 3, 2011, the original complaint was filed May 13, 2011, and Chao became a member of the Board June 28, 2011.

[4] Given this finding, the Court does not address the other demand futility theories.

9

"immense pushback" against those very reviews. *Id.* at ¶¶ 165-66. Prior to the proxy statement, the Company, through Stumpf and Atkins, assured investors that the signer and reviewer of the affidavits were one and the same. *Id.* at ¶ 112. At the time of these statements by Stumpf and Atkins, details of trial testimony and depositions taken during investigations of foreclosure activities revealed that several Wells Fargo Vice Presidents were signing affidavits while only verifying their dates, not the underlying information. *Id.* at ¶¶ 83-85, 86-89, 104, 108. Even in light of these revelations, which appeared in several news-media outlets, *id.* at ¶¶ 104, 108-09, the Board signed a statement verifying that "the Company's chief executive officer [Stumpf] and chief financial officer [Atkins] concluded that the Company's disclosure controls and procedures were effective." *Id.* at ¶ 144.

When issuing a proxy statement, "the board is obligated 'to disclose fully and fairly all material information within the board's control.'" *Malpiede v. Townson*, 780 A.2d 1075, 1086 (Del. 2001) (quoting *Stroud v. Grace*, 606 A.2d 75, 84–88 (Del. Sup. 1992)). An omitted fact is material if there is a "substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del.1994) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). In other words "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Arnold.*, 650 A.2d at 1277 (quoting *TSC*, 426 U.S. at 449). Failure to disclose a material fact is a breach of the Board's fiduciary duty of loyalty. *Malpiede*, 780 A.2d at 1086.

The Court concludes that plaintiffs have sufficiently alleged that defendants breached their duty of loyalty by failing to disclose that, in the course of government investigations, Wells Fargo had opposed discovery requests, filed motions to quash, and refused to provide details concerning the Company's policies. Defendants explicitly recommended that shareholders vote against the proposal for a new internal investigation in order to ensure that the Company could fully cooperate with government regulators. The fact that the Company was allegedly stymying the government regulators is certainly material to stockholders when considering whether to authorize a more serious internal investigation. If, as alleged, defendants did not disclose material information within the Board's control, defendants breached their duty of loyalty to the Company. *Malpiede*, 780 A.2d at 1086; *Citigroup*, 964

**United States District Court**
For the Northern District of California

A.2d 125.  The presence of the exculpatory clause requires plaintiffs to allege that defendants either knew or should have known that their acts were legally improper.  *In re Extreme Networks*, 573 F. Supp. 2d. at 1239.  Given that the Board cited compliance with regulatory investigations in its proxy statement and had already signed SEC statements certifying that the Company, through its CEO, was satisfied with its own internal reviews, defendants either knew or should have known  the status of the Company's own and outside regulatory investigations into its mortgage practices.  If, as alleged, the Company was delaying these investigations, defendants either knew or should have known that materially misstating that fact in an SEC filing was legally improper.  In light of all of the allegations in the complaint, plaintiffs have adequately alleged that defendants face a substantial likelihood of liability for breach of fiduciary duty by omitting material information in a proxy statement. Plaintiffs have established demand futility in accordance with Rule 23.1.

### III.    Sufficiency of claims

Plaintiffs allege claims for breach of fiduciary duty (Count I), abuse of control (Count II), gross mismanagement (Count III), and corporate waste (Count IV) against defendants.  Defendants move to dismiss these claims for failure to state a claim.

### A.        Breach of fiduciary duty

Under Delaware law, directors are presumed to have acted on an informed basis and in good faith.  *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 362 (Del. 1993), modified, 636 A.2d 956 (Del. 1994).  Plaintiff can overcome this presumption by alleging that defendants knowingly violated their fiduciary duties.  *Citigroup*, 964 A.2d at 125.  As discussed *supra*, plaintiffs have pled particularized facts alleging that defendants breached their duty of loyalty by omitting material facts in the proxy statement to shareholders. Plaintiffs have adequately alleged a breach of fiduciary duty.  Accordingly, defendants' motion to dismiss is DENIED as to Count I.

### B.        Abuse of control and gross mismanagement

Delaware law does not "recognize an independent cause of action against corporate directors and

United States District Court
For the Northern District of California

officers for reckless and gross mismanagement; such claims are treated as claims for breach of fiduciary duty." *Citigroup*, 964 A.2d at 115 n.6. In addition, claims for abuse of control are "often considered a repackaging of claims for breach of fiduciary duties instead of being a separate tort." *Zoran*, 511 F. Supp. 2d at 1019.

None of the three cases cited by plaintiffs stand for the proposition that a plaintiff can bring independent claims for gross mismanagement and abuse of control. In *Bodell v. General Gas & Electric Corporation*, the Delaware Court of Chancery noted that courts have in "cases of gross mismanagement on the part of a board of directors . . . acted for the protection of stockholders." 140 A. 264, 267 (Del. Ch. 1927). There is no discussion in *Bodell* of whether Delaware law recognizes a *claim* for gross mismanagement. In *Rabkin v. Phillip A. Hunt Chem. Corp.*, the complaint alleged breach of fiduciary duty, and the court held that standard of review for such a claim is whether the board's actions were grossly negligent. 547 A.2d 963, 970 (Del. Ch. 1986). Finally, in *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile*, the court merely characterized the conduct alleged in the complaint as gross negligence and gross mismanagement. 1996 Del. Ch. LEXIS 116, at *40 (Del. Ch. 1996) ("In Counts II and III of its amended and supplemental complaint, [plaintiff alleges that defendant] managed the Partnership in a grossly negligent manner."). However, the claims at issue were for breach of fiduciary duty. *Id.* at *4. Accordingly, the Court GRANTS defendants' motion and DISMISSES Counts II and III without leave to amend.

### C.      Corporate waste

A claim for corporate waste requires allegations of "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997). Under Delaware law, "'directors are guilty of corporate waste only when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Navellier v. Sletten*, 262 F.3d 923, 937 (9th. Cir. 2001) (quoting *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993)).

Here, plaintiffs claim that authorizing bonuses to Stumpf and Atkins after their false statements

to the public amounts to corporate waste. Compl. ¶¶ 150-52. Plaintiffs have not adequately alleged that the payments to Stumpf and Atkins "served no corporate purpose," or that "no consideration" was received. *Brehm*, 746 A.2d at 263. Accordingly, the Court DISMISSES Count IV. Plaintiffs have requested, and the Court grants, leave to amend.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Docket No. 65. If plaintiffs wish to amend the complaint, the amended complaint must be filed by **February 24, 2012**. The Court also GRANTS defendants' request for judicial notice.

**IT IS SO ORDERED.**

Dated: February 8, 2012

_____
SUSAN ILLSTON
United States District Judge